UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY JAHANGIRI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ARCADIS U.S., INC.,<br><br>Defendant. | Case No. 25-cv-03682-SK<br><br>**ORDER DENYING MOTION TO DISMISS OR TRANSFER AND GRANTING MOTION TO SEVER**<br><br>Regarding Docket Nos. 13, 16 |

This matter comes before the Court upon consideration of two motions filed by Defendant Arcadis U.S., Inc. ("Defendant"). First, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to strike pursuant to Rule 12(f), and to dismiss or transfer pursuant to Rule 12(b)(3). (Dkt. No. 13.) Second, Defendant filed a motion to sever pursuant to Rule 21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and all parties have consented to the jurisdiction of a magistrate judge. (Dkt. Nos. 5, 19, 22). Having carefully considered the parties' papers, relevant legal authority, the record in the case, and having had the benefit of oral argument, the Court hereby DENIES Defendant's motion to dismiss, strike and/or transfer and GRANTS Defendant's motion to sever for the reasons set forth below.[1]

## BACKGROUND

Plaintiffs Jay Jahangiri and Azam Azimi (collectively, "Plaintiffs") bring this action against their former employer for discrimination, harassment, retaliation, and wrongful termination under Title VII of the Civil Rights Act of 1964 and California's Fair Employment and

---

[1] The Court GRANTS Defendant's request for judicial notice of two filings in *Azimi v. Arcadis, U.S., Inc.*, 25-cv-03687-LB (N.D. Cal, closed May 19, 2025). (Dkt. No. 14.); *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (explaining that courts may take judicial notice of documents on file in federal courts).

Housing Act. (Dkt. No. 8.) The First Amended Complaint ("FAC") alleges the following facts, which the Court accepts as true for purposes of Defendant's Rule 12(b)(6) motion.

Jahangiri began working for Defendant as Principal Environmental Oversight Manager on November 1, 2023. (*Id.* at ¶ 1.) Jahangiri comes from Iran, speaks Farsi, is Muslim, and was 64 years old at the time of his dismissal. (*Id.* at ¶ 19.) Beginning in February 2024, Jahangiri's supervisors and coworkers subjected him to a barrage of discriminatory remarks based on his national origin, religion, and age. For example, Uday Bhaskar Rao Tumu, an indirect supervisor, said that Jahangiri was "on borrowed time," in the "has been category," "past his expiration date," too old to think clearly, and "too old and expired." (*Id.* at ¶¶ 24-25, 28-29, 33.) Tumu also stated that "[a]ll the Muslims in India are the troublemakers like yourself." (*Id.* at ¶ 31.) Mario Santoyo, Jahangiri's direct supervisor, accused Jahangiri of "troublemaker Mullah Iranian-New Yorker mannerism and looks," referred to him as a "one of the Ramadan heathens" and a criminal-looking Iranian," "told him not to speak "funny gibberish," and threated to fire him if he did not "fix" his "fucking Iranian, combined with fucking New Yorker criminal face, behavior, and mannerisms." (*Id.* at ¶¶ 23, 26-27, 35-36.) Coworker Patrick Jolly stated that Jahangiri was "a fucking troublemaker, just like the rest of your people who are making fucking trouble in the fucking world." (*Id.* at ¶¶ 32.) Jahangiri reported the remarks to Senior Vice President Girish Kripalani on several occasions, who discouraged Jahangiri from reporting to Human Resources and took no remedial action. (*Id.* at ¶¶ 30, 32, 37, 40.) A coworker, Scott Hine, also reported Santoyo's misconduct toward Jahangiri to Kripalani. (*Id.* at ¶ 39.) Although Jahangiri received a positive performance evaluation in February 2024, (*id.* at ¶ 23), his employment was terminated on July 24, 2024, (*id.* at ¶ 41).

Azimi began working for Defendant as a Senior Segment Manager on March 27, 2023. (*Id.* at ¶ 2.) Azimi is of Afghan descent, speaks Farsi, is Muslim, and was 74 years old at the time of his dismissal. (*Id.* at ¶ 43.) Santoyo, an indirect supervisor, mocked Azimi's English fluency, assigned him work outside of his job function, blamed him for incomplete work outside of his job

2

function, insinuated that he was not fully contributing due to age, stated Islam is a terrorist religion, and mocked fasting. (*Id.* at ¶¶ 46-48.) Tumu referred to Azimi as an "old man" and part of a "geriatrics group" that the Company needed to "get rid of." (*Id.* at ¶¶ 50, 57.) Together, Santoyo and Tumu made comments referring to Azimi as an "old man" and "Islamic terrorist." (*Id.* at ¶¶ 48, 55.) Azimi did not file an official complaint with Human Resources out of fear of retaliation, but he did discuss the comments with his supervisor, Van Jaarsveld, who did not take remedial action. (*Id.* at ¶¶ 50, 58.) The work environment led Azimi to become anxious and depressed, resulting in a decline in his work performance and eventual demotion. (*Id.* at ¶ 51.) After Tumu was promoted, he revoked Azimi's remote work authorization and denied him a company car and travel allowance, while allowing a comparator to continue working remotely. (*Id.* at ¶¶ 53-54.) On February 20, 2024, "management" placed Azimi on a performance improvement plan. (*Id.* at ¶¶ 56.) One month later, on March 19, 2025, Azimi's employment was terminated due to "fabricated" performance issues. (*Id.* at ¶¶ 59.)

Both Plaintiffs were involved in two discriminatory incidents. First, Azimi was present when Santoyo told Jahangiri not to give him "that troublemaker Mullah Iranian-New Yorker mannerism and looks." (*Id.* at ¶ 26.) After stating that "funny gibberish" should not be spoken, Santoyo asked Azimi whether he understood. (*Id.*) Second, Tumu, commented to Jahangiri that both Plaintiffs belong to the "two lunch eating" cohorts. (*Id.* at ¶ 31).

Jahangari commenced this civil action on April 28, 2025. (Dkt. No. 1.) On the same day, Azimi filed a separate action, which was assigned to Magistrate Judge Laurel Beeler. (*Azimi*, 25-cv-03687-LB.) On May 7, 2025, Jahangiri moved to relate the two actions, (Dkt. No. 4), which Defendant opposed. (Dkt. No. 6.) The Court denied the motion to relate because the "cases involve different plaintiffs whose allegations of discrimination are based on distinct events, comments, and conduct." (Dkt. No. 7 (citing Civ. L. Rule 3-12(a)).) Subsequently, on May 16, 2025, Azimi voluntarily dismissed his individual case, (*Azimi*, 25-cv-03687-LB, Dkt. No. 8), and Jahangiri filed his FAC adding Azimi and class allegations. (Dkt. No. 8).

3

Defendant filed its motion to dismiss on June 27, 2025, and Defendant argues that Azimi's claims are untimely, Plaintiffs' class claims are insufficiently pled, and venue is improper. (Dkt. No. 13.) Defendant filed its motion to sever on July 1, 2025. (Dkt. No. 16.) Pursuant to a consolidated briefing schedule, (Dkt. No. 21), the parties filed consolidated opposition and reply briefs, (Dkt. Nos. 25, 26.) The Court heard oral argument on August 18, 2025.

## ANALYSIS

### A.     Whether Defendant's Motion to Strike is Untimely.

Plaintiffs argue that Defendant's motion to strike under Rule 12(f) is untimely. (Dkt. No. 25, p. 21.) A defendant may move to strike a pleading under Rule 12(f) either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).

The parties agree that the deadline for Defendant to file its motion was 21 days after services of the FAC, but they disagree as to whether the date of service was May 16, 2025 (the electronic filing date) or June 6, 2025 (the date of manual service). (Dkt. No. 25, p. 21; Dkt. No. 26, p. 9). Civil complaints must be served manually. Civ. L. R. 5-1(h)(1) ("electronically filed civil complaints and other case-initiating documents . . . must be served manually.") Accordingly, Defendant is correct that the start of the 21-day period begins from the date of manual service, June 6, 2025. (Dkt. No. 12.) Defendant filed the motion 21 days later, on June 27, 2025. (Dkt. No. 13.) Accordingly, Defendant's motion is timely.

### B.     Whether This Action Should Be Dismissed for Improper Venue or Transferred to the Eastern District of California.

Defendant contends that venue in the Northern District of California is improper or, in the alternative, that the case should be dismissed or transferred pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 13, pp. 21-18.) The Court will address each argument in turn.

#### 1.     Whether Venue in the Northern District of California is Improper.

Title VII includes a special venue provision that "broadens the range of appropriate venues available to a plaintiff." *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal.

2005); 42 U.S.C. § 2000e-5(f)(3). Among other things, section 2000e-5(f)(3) provides that venue is proper "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed." *Id.* Defendant does not dispute that Plaintiffs allege unlawful employment practices that were committed in California. (Dkt. No. 13, p. 22.) Accordingly, section 2000e-5(f)(3) allows Plaintiffs to file in any judicial district in California, including the Northern District of California.

Defendant's argument that Plaintiffs can only file in the district where the alleged discrimination took place—the Eastern District—contradicts the plain text of the statute. The statutory language permitting venue in "any judicial district *in the State*" would be rendered meaningless if plaintiffs were only permitted to litigate their action in the district where the misconduct occurred. *See* 42 U.S.C. § 2000e-5(f)(3) (emphasis added); *see also Ellis*, 372 F. Supp. 2d at 538 (explaining that section 2000e-5(f)(3)'s "in the State" language "would logically be explained by an intent to allow plaintiffs to assert venue outside the district where they experienced discrimination . . . ."). Venue is proper in this district, and the Court therefore DENIES Defendant's motion to dismiss for improper venue pursuant to Rule 12(b)(3).

### 2. Whether Section 1404(a) Transfer is Warranted.

District courts have discretion to transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The section 1404(a) analysis governs transfers of Title VII actions. *Ellis*, 372 F. Supp. 2d at 537.

In considering a transfer motion, courts first determine whether venue is proper in the alternate district. *Jackson v. Tesla, Inc.*, 772 F. Supp. 3d 1111, 1118 (N.D. Cal. 2025). Then, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Courts weigh private and public interest factors affecting the convenience of the forum. *Id.* Private factors include: (1) the location where the relevant agreements were negotiated and

5

executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Courts also consider the presence of a forum selection clause and the relevant public policy in the state. *Id.* at 499. Public factors to consider include the level of congestion of the local docket, the local public interest in the outcome of a case, avoidance of conflict of laws issues, and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Decker*, 805 F.2d at 843. The decision to transfer a case ultimately lies within the discretion of the district court. *Id.* at 842.

Defendant contends this action should be transferred to the Eastern District of California, where the majority of Plaintiffs' work took place. (Dkt. No. 13, pp. 23-28.) Venue is proper in the Eastern District because, like the Northern District, it is "in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). In addition, the Eastern District is "the judicial district in which the employment records relevant to such practice are maintained and administered." *Id.*; (Dkt. No. 13-1, ¶ 7, 13-2, ¶ 4.) Accordingly, the Court moves on to consider the private and public interest factors.

### i. Plaintiffs' Choice of Forum.

A plaintiff's choice of forum generally weighs against transfer. *Decker*, 805 F.2d at 483. Where, as here, "venue is based on allegations that the locus of unlawful employment practices occurred in that state, but not in that district," "a plaintiff's choice of forum is entitled to greater deference prior to intrastate transfer." *Ellis*, 372 F.Supp.2d at 538. This is particularly the case where, as here, a plaintiff chooses to litigate outside of the district where the misconduct occurred out of fear of facing a hostile court or jury. *Id.* (explaining that Congress may have intended to allow plaintiffs to select a forum outside the district where they experienced discrimination "on the

6

assumption that Title VII plaintiffs were most likely to face hostile courts or juries in that location"); *cf. Hotchkiss v. CSK Auto, Inc.*, No. C11-1646 MJP, 2012 WL 380288, at *2, 4 (W.D. Wash. Feb. 3, 2012) (affording the plaintiffs' choice less deference where plaintiffs did not suggest they would receive an unfair trial in the alternate district); (Dkt. No. 25, p. 16 (Plaintiffs explaining that as "Muslim men of Persian descent," they would likely face a hostile jury in the Eastern District).).

Defendant argues that Plaintiffs' choice should be entitled to less deference because Plaintiffs are forum shopping, represent a class, and do not reside in the Northern District. (Dkt. No. 13, p. 22-24.) However, as explained above, the purpose of section 2000e-5(f)(3) is to allow Title VII plaintiffs some degree of choice of forum. *Ellis*, 372 F. Supp. 2d at 537-38; *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) ("Title VII's venue provision obviously contemplates the possibility that several districts could provide an appropriate venue for the same action."). As to the fact that Plaintiffs represent a class, "[w]here venue is governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law, *even where that case is brought as a class action*." *Ellis*, 372 F. Supp. 2d at 537 (emphasis added). Lastly, Defendant is incorrect that Plaintiffs do not reside in the Northern District. Jahangiri resides in the Northern District. (Dkt. No. 25-2, ¶ 3.) Regardless, whether plaintiffs live in the district is less relevant in Title VII actions because section 2000e-5(f)(3) permits plaintiffs to file anywhere "in the State" where the misconduct took place. 42 U.S.C. § 2000e-5(f)(3); *Ellis*, 372 F. Supp. 2d at 538.

Given that the purpose of Title VII's venue provision is to give plaintiffs liberal choice in their selection of a forum, "unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *See Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (considering similar special venue provision in securities context). Accordingly, Plaintiff's choice of forum weighs heavily against transfer.

///

7

### ii. Access to Evidence and Witnesses.

Neither party specifies which witnesses or evidence they anticipate requiring. However, the Court assumes that the key evidence includes Plaintiffs' personnel records, which are located in the Eastern District. (Dkt. No. 13-1, ¶ 7, 13-2, ¶ 4, 13, 15.) The Court similarly assumes that the key witnesses include Plaintiffs' former supervisors and coworkers, most of whom either live or work in the Eastern District. (Dkt. No. 13-1, ¶¶ 3-8; Dkt. No. 13-2, ¶¶ 4, 10-12.) Plaintiff points to four potentially relevant witnesses whose LinkedIn locations fall outside of the Eastern District. (Dkt. No. 25-1, ¶¶ 22-23.) However, LinkedIn locations do not establish residence. Further, three of the four potential witnesses live outside California, such that neither district would be convenient. (*Id.*)

Although most of the witnesses and evidence are located in the Eastern District, the Court finds these factors weigh only slightly in favor of transfer. Even in 1998, "the location of the evidence and witnesses . . . no longer weighed heavily given the modern advances in communication and transportation." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (considering this factor in the context of a personal jurisdiction analysis). Today, most document production occurs digitally, such that the physical location of documents is irrelevant. *Huntsman v. Sw. Airlines Co.*, No. 19-CV-00083-PJH, 2019 WL 3254212, at *4-5 (N.D. Cal. July 19, 2019). Likewise, since the coronavirus pandemic, courts and litigators have made increasing use of videoconferencing tools, rendering the location of witnesses less important. Moreover, the two districts at issue border each other and can be reached through a drive of several hours. The ease of transportation between the two districts is demonstrated by the fact that Jahangiri lived in the Northern District while working for Defendant in the Eastern District. (Dkt. No. 13-2, ¶ 4; Dkt. No. 25-2, ¶ 3.) Given the relative proximity of the two districts at issue, any inconvenience is minimal. *See Sadat v. State Univ. of New York Upstate Med. Univ.*, No. 19-CV-5053 (JMF), 2019 WL 4511555, at *2 (S.D.N.Y. Sept. 19, 2019).

///

### iii. Litigation Costs.

Defendant argues that litigating in this district would be prejudicially costly for it because the project Plaintiffs worked on is headquartered in the Eastern District. (Dkt. No. 26, p. 21.) Defendant also suggests litigating in the Eastern District would be less costly for Azimi because it is closer to his residence in Orange County. (*Id.*) As explained above, modern technology and the relative proximity of the two districts should minimize costs associated with travel between the two districts. In addition, Defense counsel is located in the Central District, and Plaintiffs' counsel is located in the Northern and Eastern Districts. (*See* addresses on Dkt.) Accordingly, the Court finds this factor is neutral.

### iv. Contacts with the Chosen Forum.

The contacts with the Northern District include Defendant's San Francisco office, which Plaintiffs were assigned to for "internal administrative purposes," as well as Jahangiri's residence in the Northern District. (Dkt. No. 13-1, ¶¶ 3-8; Dkt. No. 13-2, ¶¶ 4, 10; Dkt. No. 25-2, ¶ 4; Dkt. No. 25-3, ¶ 4.)[2] However, these contacts are not related to Plaintiffs' discrimination claims, which arise out of conduct taking place in the Eastern District. (Dkt. Nos. 8, 13-1, 13-2.) Plaintiffs point to a few relevant contacts with this district: Jahangiri allegedly reported the harassment to Kripalani, whose LinkedIn location is San Francisco, (Dkt. No. 8, ¶ 30; Dkt. No. 25-1, ¶ 22); and both Plaintiffs "received emails" from San Francisco. (Dkt. No. 25-2, ¶ 5; Dkt. No. 25-3, ¶ 5.) These incidents are less important to Plaintiffs' claims than the discriminatory comments, all of which appear to have been made in the Eastern District. (Dkt. Nos. 8, 13-1, 13-2.) It is possible that the claims of other class members have a greater connection to the Northern District, but at this stage, the number of putative class members in each district is unclear. In sum, Plaintiffs have

---

[2] Plaintiffs state that they were "managed within this district" but provide no evidentiary support for this assertion other than the fact that they were assigned to San Francisco for "internal administrative purposes." (Dkt. No. 25, p. 13.) Plaintiffs' managers declared under penalty of perjury that Plaintiffs were not managed in San Francisco. (Dkt. No. 13-1, ¶¶ 5-7; Dkt. No. 13-2, ¶¶ 5, 8, 10, 15.)

9

some contacts with this District, but greater contacts with the Eastern District. On balance, the Court finds this factor slightly favors transfer.

### v. Court Congestion.

The Eastern District has a larger case backlog than the Northern District. *See Garza v. Campbell*, No. 1:23-CV-01723 JLT SKO (HC), 2025 WL 2230036, at *1 (E.D. Cal. Aug. 5, 2025) ("[T]he Eastern District Court, one of the busiest district courts in the country, is operating under an ongoing judicial emergency and is burdened with a substantial backlog."). Moreover, considering the Court's own docket, the Court finds that it can adjudicate this matter expediently and efficiently. *See Huntsman*, 2019 WL 3254212, at *5. This factor weighs against transfer.

### vi. Other Factors.

As this is a state-wide class action, all districts in California should have an equal interest in the outcome of the case. *See id.* The fact that both districts are located in California renders several other factors neutral, including familiarity with governing law, avoidance of conflict of law issues, and public policy. Neither party discusses the location of relevant agreements, potential issues with attendance of non-party witnesses, the burden of jury duty, or the presence of a forum selection clause. Accordingly, all remaining factors are neutral.

### vii. Balancing.

Defendant has not met its burden to make a strong showing of inconvenience. While the Eastern District is home to more evidence, witnesses, and connection with Plaintiffs' claims, Defendant has not demonstrated that litigating in a neighboring district in the digital age would be significantly inconvenient. Plaintiffs attempt to distinguish *Ellis* because there, the named plaintiffs had more contacts with their chosen forum. (Dkt. No. 25, p. 26.) But the question is not whether Plaintiffs have adequate connection to the chosen forum; the question is whether Defendant has made a strong enough showing of inconvenience to warrant upsetting Plaintiff's choice of forum. *See Decker*, 805 F.2d at 843. Defendant has not.

In reaching this determination, the Court is mindful that intrastate transfer in Title VII

10

cases is disfavored and that section 1404(a) should not be applied to frustrate Congress's aim of allowing Title VII plaintiffs a broader range of available venues. *Ellis*, 372 F. Supp. 2d at 538.

Defendant points to a number of unpublished decisions granting intrastate transfer following *Ellis*. However, these cases are neither controlling nor applicable. In *Hong v. Morgan Stanley & Co., LLC*, No. C12-01756 TEH, 2012 WL 5077066 (N.D. Cal. Oct. 18, 2012), the court granted a motion to transfer, finding the transferee district more convenient for witnesses and more closely connected to the dispute. *Id.* at *6. *Hong*, decided before the coronavirus pandemic and the concomitant expansion of remote litigation practices, offers limited guidance on how much weight the convenience of witnesses carries in the present context. Further, *Hong* involved an individual action in which the Northern District had little interest, *id.* at *3, *6, whereas Plaintiffs represent a state-wide class in which all districts have an equal interest, *see Huntsman*, 2019 WL 3254212, at *5.

Defendant's remaining cases are similarly factually distinct. In *Dean v. City & Cnty. of San Fransisco*, No. 1:23-CV-00542-KES-SKO, 2025 WL 1548764 (E.D. Cal. May 30, 2025), the court found that transfer would accord "substantial judicial economy" because 25 virtually identical lawsuits had been consolidated in the transferee district. *Id.* at *1-3, 5-6. Here, the parties have not pointed to any related actions pending in either district. In *Suarez v. Del Toro*, No. 21-CV-05170-CRB, 2022 WL 36094 (N.D. Cal. Jan. 4, 2022) and *Karsten v. McDougall & Sons*, No. 3:20-CV-00748-YY, 2020 WL 4805434 (D. Or. Aug. 18, 2020), the courts accorded diminished weight to the plaintiffs' chosen forum because the plaintiffs relocated to the transferor district only after the events giving rise to the litigation had occurred. *Suarez*, 2022 WL 36094, at *2; *Karsten*, 2020 WL 4805434 at *2. Jahangiri, however, resided in this district throughout his employment. (Dkt. No. 25-2, ¶ 3.) Moreover, *Dean*, *Suarez*, and *Karsten* do not address whether section 2000e-5(f)(3) requires heightened deference to a plaintiff's choice of forum in the context of an intrastate transfer, nor do they engage with *Passantino* or *Ellis* on this issue.

The Court thus DENIES Defendant's motion to transfer pursuant to section 1404(a). As

11

stated at the motion hearing, the Court directs the parties to schedule depositions in a manner that maximizes the convenience of the witnesses, either by conducting them remotely or by traveling to locations convenient for the witnesses.

## C.     Whether Azimi Was Misjoined.

After the Court denied Jahangiri's motion to relate Azimi's case, Jahangiri amended his complaint to add Azimi.  (Dkt. Nos. 7, 8.)  Defendant contends that Azimi should be dismissed from this action pursuant to Rule 21.  (Dkt. No. 16.)

Under Rule 20, joinder is proper if (1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action.  *See* Fed. R. Civ. P. 20(a); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).  Even once these requirements are met, a district court must examine whether permissive joinder would "comport with the principles of fundamental fairness" or would result in prejudice to either side.  *Coleman*, 232 F.3d at 1296.  If plaintiffs have been misjoined, their claims may be severed "as long as no substantial right will be prejudiced." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).

In assessing whether plaintiffs' claims of discrimination arise out of the same transaction, occurrence, or series of transactions or occurrences, courts consider whether the plaintiffs alleged a company-wide policy of discrimination, discrimination involving the same supervisor and conduct, the same adverse action, and temporal and geographic proximity between discriminatory actions.  *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1087 (C.D. Cal. 2002) (citing *Byers v. Illinois State Police*, No. 99–C8105, 2000 WL 1808558 (N.D. Ill. Dec. 6, 2000)); *Renati v. Wal-Mart Stores, Inc.*, No. 19-CV-02525-CRB, 2019 WL 5536206, at *4-5 (N.D. Cal. Oct. 25, 2019).

For example, district courts in this Circuit have permitted joinder where the plaintiffs allegations shared a logical relationship, or the alleged discrimination arose out of a common policy or practice.  *E.g., Walker v. Bryson*, No. 1:11-CV-01195-AWI, 2012 WL 5186658, at *6-7

(E.D. Cal. Oct. 16, 2012) (finding a logical relationship where one plaintiff's retaliation claim arose, in part, out of complaints made regarding treatment of the other plaintiff); *Ferger v. C.H. Robinson Worldwide, Inc.*, No. C06-174 RSL, 2006 WL 2091015, at *1 (W.D. Wash. July 25, 2006) ("[A]lleging discrimination based on a common policy or practice, particularly involving the same decisionmakers, can satisfy both requirements of Rule 20."). Plaintiffs' cases—none of which come from this Circuit—fall in this category. *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (plaintiffs alleged that they "had been injured by the same general policy of discrimination"); *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 144 (E.D. Pa. 2001) ("All of the specific incidences of discrimination flow from this general policy, or pattern and practice, and therefore are logically related and arise out of the same series of transactions or occurrences."); *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 143 (N.D.N.Y. 1999) ("[P]laintiffs have alleged a pattern of conduct . . . which discriminated against them on the basis of age.").

On the other hand, courts are reluctant to join plaintiffs who "are all alleging a different factual basis for how that alleged discrimination affected each of them" and allege discrimination involving different decisionmakers. *Wynn*, 234 F. Supp. 2d at 1085-86 (distinguishing cases that involved "a single, common decision-maker."); *see also Edwards v. Mabus*, No. CV 15-00820-MWF (AS), 2015 WL 13917210, at *4 (C.D. Cal. Nov. 20, 2015) (severing plaintiffs whose claims involved different units, different supervisors, different types of harassment, and no allegations of a common policy); *Gsouri v. Farwest Steel Corp.*, No. C10-5769BHS, 2011 WL 1827343, at *2 (W.D. Wash. May 12, 2011) (severing plaintiffs who alleged discrimination by different individuals during different time periods). Likewise, allegations that several plaintiffs experienced individualized discrimination while employed by the same defendant are insufficient to link their claims absent allegations that the discrimination was caused by a common pattern or policy. *Gammons v. Real Prop. Inv. Servs., Inc.*, No. CV-10-8081-PCT-LOA, 2010 WL 3156076, at *3 (D. Ariz. Aug. 9, 2010) ("While each Plaintiff alleges Title VII discrimination claims against the same employer, general claims of discrimination are not enough to create a common

transaction or occurrence."); *see also Coughlin*, 130 F.3d at 1350 (affirming severance of plaintiffs challenging delay of their immigration applications and petitions where the plaintiffs did "not allege a pattern or policy of delay in dealing with all applications and/or petitions" but rather "claim[ed] that, in specified instances, applications and petitions ha[d] not been addressed in a timely manner."). If each plaintiff's claim requires individualized inquiry, joinder is not proper. *Renati*, 2019 WL 5536206, at *5; *Cejas v. Brown*, No. 318CV00543WQHJLB, 2018 WL 3532964, at *4 (S.D. Cal. July 20, 2018); *Hernandez v. Best Buy Stores, L.P.*, No. 13CV2587 JM(WVG), 2016 WL 1110265, at *3 (S.D. Cal. Mar. 22, 2016).

Plaintiffs' claims fall within the second category. Plaintiffs do not allege a common policy or practice resulting in their discrimination. (Dkt. No. 8.) While they allegedly experienced a "systemic pattern of discriminatory treatment," the FAC lacks facts supporting the notion that Defendant had a pattern or policy of discrimination. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation."). On the contrary, the alleged facts suggest that, in individual instances, both Jahangiri and Azimi experienced discriminatory comments. *See Coughlin*, 130 F.3d at 1350.

The FAC indicates that resolution of each plaintiff's claim will require a fact-intensive, individualized inquiry. Jahangiri and Azimi allegedly held different jobs (Principal Environmental Oversight Manager versus Senior Segment Manager / Construction Handover Oversight Manager), at different times (November 1, 2023–July 25, 2024 versus March 27, 2023–March 19, 2024), under different direct supervisors (Erik Van Jaarsveld / Mario Santoyo versus Jason Zimmerman). (Dkt. No. 8, ¶¶ 1, 2, 18, 22, 23, 41, 42, 59.) Although Plaintiffs allege two common principal offenders (Santoyo and Uday Bhaskar Rao Tumu), they allege different discriminatory remarks made at different times, (*id.* at ¶¶ 24-29, 33, 34-36, 46-50, 55, 56, 57), with only two overlapping incidents, (*id.* at ¶¶ 26, 31). Further, Jahangiri accuses additional individuals of engaging in discriminatory conduct or failing to act after learning of such conduct. (*Id.* at ¶¶ 30, 32, 36-40.) And while the only adverse action alleged by Jahangiri is termination of

14

his employment, Azimi additionally alleges the revocation of his remote work status, denial of a company vehicle and travel budget, and placement on a performance improvement plan. (*Id.* at ¶¶ 53-54.) Perhaps most significantly, the Plaintiffs experienced varying levels of success in their employment prior to termination, a distinction that will necessarily require individualized analyses of pretext. While Jahangiri "consistently exceed[ed] performance expectations," (*Id.* at ¶ 23), Azimi was accused of "not fully contributing," experienced "a decline in his work performance," and was demoted and placed on a performance improvement plan, (*Id.* at ¶¶ 48, 51, 56).[3] *See Gammons*, 2010 WL 3156076, at *3 (severing plaintiffs where plaintiffs' claims involved different types of discrimination, jobs, direct supervisors, principal offenders, reasons for leaving their employment, and performance issues).

Because the parties must litigate Plaintiffs' claims on an individualized basis, Defendant's motion to sever is granted. As Plaintiffs have not satisfied the "same transaction" requirement of Rule 20, the Court need not decide whether Plaintiffs' claims share a common question of law or fact, or whether joinder would prejudice either party. *Renati*, 2019 WL 5536206, at *5.

Where no substantial right will be prejudiced by severance, courts can remedy misjoinder by dismissing the claims of all but the first named plaintiff without prejudice to the filing of individual actions. *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870-71 (9th Cir. 2013) (citations omitted).

Plaintiffs have not identified any substantial right that could be prejudiced by severance of Azimi's claims. *See Coughlin*, 130 F.3d at 135. Accordingly, the Court will exercise its Rule 21 authority to sever and dismiss Azimi's claims without prejudice, and this action will proceed

---

[3] The Court rejects Defendant's argument that Plaintiffs' claims are distinct because Plaintiffs come from different countries and are of different ages. (Dkt. No. 26, p. 26.) Theoretically, discrimination plaintiffs could allege claims arising from the same transaction if they were affected by a common pattern or policy of xenophobia directed at all foreigners or ageism directed at all employees above a certain age. Nevertheless, Plaintiffs' claims involve individualized inquiries for other reasons, as elaborated above.

with only Jahangiri. Accordingly, the Court declines to address Defendant's arguments that Azimi's claims are untimely.

### D. Whether Jahangari's Claims Should Be Dismissed for Failure to State a Claim.

#### 1. Whether Jahangiri Improperly Conflates Discrimination and Harassment Claims.

Defendant argues that Jahangiri improperly conflates discrimination and harassment into the same causes of action. (Dkt. No. 13, p. 4.) However, Defendant does not provide any legal analysis supporting this argument, and Jahangiri does not respond to this argument. As Defendant does not seem to be asking the Court to dismiss or strike any part of the FAC relating to discrimination or harassment, the Court declines to rule on this issue.

#### 2. Whether the Court Should Strike Jahangiri's Class Allegations.

Defendant argues that Jahangiri's class claims should be dismissed because his allegations fail to meet the requirements for class certification. (Dkt. No. 13, pp. 15-20.) The Court construes this as a motion to strike class allegations pursuant to Rule 12(f).

"Courts in this district rarely grant motions to strike class allegations at the pleading stage on the ground that the claims at issue are not subject to certification under Rule 23." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 988 (N.D. Cal. 2014). While some courts have recognized the authority to strike class allegations under Rule 12(f) prior to discovery, they have only done so in rare occasions where the class definition is obviously defective in some way. *Boddie v. Signature Flight Support Corp.*, No. 19-CV-03044-DMR, 2019 WL 3554383, at *3 (N.D. Cal. Aug. 5, 2019) (citations omitted).

Here, Defendant has pointed to vagueness in Jahangiri's class allegations, but it has not shown that the class allegations are so deficient that they cannot be cured through discovery. Given that Defendant has not filed an answer, discovery has not commenced, and no motion for class certification has been filed, the Court finds that Defendant's motion to dismiss Jahangiri's class claims is premature. *Wisdom v. Easton Diamond Sports, LLC*, 824 F. App'x 537, 538 (9th Cir. 2020); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615-16 (N.D.

16

Cal. 2007). Accordingly, Defendants' motion to dismiss the class claims is DENIED WITHOUT PREJUDICE.

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's motion to dismiss and GRANTS Defendant's motion to sever. Plaintiff Azam Azimi is HEREBY DISMISSED from this action WITHOUT PREJUDICE.

**IT IS SO ORDERED**.

Dated: August 18, 2025



SALLIE KIM
United States Magistrate Judge

17